IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE ROBINSON,<br><br>           Petitioner,<br><br>   vs.<br><br>UNITED STATES OF AMERICA,<br><br>           Respondent. | No. CV-F-02-5418 OWW<br>(No. CR-F-97-5129 OWW)<br><br>MEMORANDUM DECISION AND ORDER DENYING PETITIONER'S MOTION FOR POST-CONVICTION DISCOVERY AND RENEWED MOTION FOR POST-CONVICTION DISCOVERY (Docs. 334 & 365), DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 (Doc. 326), AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT FOR RESPONDENT |

    On August 8, 2002, Petitioner Lawrence Robinson timely filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 326).[1]  Petitioner contends that he suffered

---

[1] By Order filed on September 6, 2006, Petitioner's motion was dismissed as untimely (Doc. 351).  However, by Order filed on June 12, 2007, Petitioner's motion to vacate the September 6, 2006 Order was granted (Doc. 362).

1

(1) prosecutorial misconduct because the Government solicited false and misleading testimony before the Grand Jury resulting in the Indictment and (2) ineffective assistance of counsel during pre-trial, trial and appellate proceedings because defense counsel failed to "take appropriate steps necessary in objecting and filing suppression motions to preserve Petitioner's constitutional right to challenge federal jurisdiction under the Hobbs Act."[2]  The United States has filed an opposition to Petitioner's motion (Doc. 328).

   A.   **Background**.

   Petitioner was charged by indictment with various crimes stemming from two robberies.  In connection with the first robbery of a residence on November 21, 1996, Petitioner was charged with theft of a firearm and aiding and abetting (Count 3, 18 U.S.C. §§ 2 and 924(1) and (2); and carrying a firearm during a crime of violence (Count 4, 18 U.S.C. § 924(c)(1)).  In connection with the second robbery of an electronics store, Videotronics, on May 1, 1996, Petitioner was charged with interference with commerce by robbery and aiding and abetting (Count 5, 18 U.S.C. §§ 2 and 1951(a)); carrying a firearm during a crime of violence (Count 6, 18 U.S.C. § 924(c)(1); and death caused by use of a firearm during a crime of violence and aiding

---

[2]Petitioner was represented by Victor Chavez until June 18, 1997.  Petitioner was represented by Robert Rainwater and Hilary Chittick until May 30, 1999.  Petitioner was represented on appeal by Robert Rainwater.  Petitioner was represented by Robert Rainwater following the Ninth Circuit's reversal and remand for resentencing and on the subsequent appeal from resentencing.

and abetting (Count 7, 18 U.S.C. §§ 2 and 924(j)(1).

A jury convicted Petitioner on all but one of the charges. For his role in the residential robbery, Petitioner was convicted on the theft of a firearm charge, but acquitted on the charge of carrying a firearm during a crime of violence. Petitioner was convicted on all counts related to the robbery of the electronics store, Videotronics.

Petitioner was sentenced to life imprisonment plus a term of 420 months. Petitioner timely appealed his conviction and sentence. The Ninth Circuit reversed Petitioner's convictions of the counts relating to the residential robbery on the ground of insufficient evidence, vacated Petitioner's sentence, and remanded to the District Court for resentencing. On remand, Petitioner's sentence was reduced to life imprisonment plus a term of 300 months. Petitioner's sentence was affirmed by the Ninth Circuit.

C.  <u>Grounds for Relief</u>.

Petitioner's claims of prosecutorial misconduct and ineffective assistance of counsel are based on his contention that, because of evidence that Videotronics' business license had expired on March 31, 1996, the business could not have been operating in interstate commerce. Petitioner's motion attaches as Exhibit A a letter dated March 26, 2001 to Petitioner from Investigator Eldon Lollar:

> Per your request, I checked with City Hall for the business of 'Videotronics'. Videotronics was located at 930 Fresno

3

|   |   |
|---|---|
| 1 | Street., it's business license number is 121205. It opened November 15, 1994 and |
| 2 | closed March 31, 1996. Malcolm D. Rosemond was the sole owner. City Hall closed |
| 3 | Videotronics on March 31, 1996, because Mr. Rosemond had not paid to keep his business |
| 4 | license. |

Also attached to Petitioner's motion as Exhibit D is a copy of a memorandum dated July 16, 1997 from investigator Michael McDaniel to Robert Rainwater, Hilary Chittick, Marc Ament and Eldon Lollar, which states:

> On July 10, 1997, I received a request to obtain a copy of a business license under the name of Malcolm Rosemond. [O]n July 14, 1997, a copy of the license was obtained from City Hall and it is attached to this report.

Because Videotronics did not have a City of Fresno business license at the time of the robbery, Petitioner argues, Videotronics could not have been a business operating in interstate commerce at the time of the robbery. Relying of Exhibits A attached to his motion, Petitioner contends that, because Videotronics had closed on March 31, 1996, Videotronics could not have sold any merchandise after March 12, 1996.

    Petitioner cites no case authority in support of his contention and independent research reveals none.

    That Videotronics may have been conducting business unlawfully because of the absence of the business license does not negate liability under the Hobbs Act.

    In *United States v. Hanigan*, 681 F.2d 1127 (9th Cir.1982), *cert. denied*, 459 U.S. 1203 (1983), the defendant was convicted of violating the Hobbs Act when he robbed and tortured illegal

aliens. In pertinent part the Ninth Circuit ruled:

> Hanigan's second attack on jurisdiction is that the victims were not protected by the Hobbs Act because they had entered the United States illegally. He urges that the term 'commerce' as used in the statute does not include commerce that Congress has made illegal.
>
> Hanigan points to nothing in the statute or legislative history, however, that would support his argument that 'commerce' must be 'legal' commerce. The statute by its terms does not limit 'commerce' to the flow of legally condoned articles. Nor could the commerce clause itself mean that an activity to be regulated by Congress must be legally permissible. It is anomalous to maintain that Congress could make undocumented entry into the United States - the movement of persons - unlawful, while at the same time maintaining that the same movement of persons is not 'commerce over which the United States has jurisdiction' - the phrase which Congress used in the Hobbs Act. 18 U.S.C. § 1951(b)(3). Accordingly, we hold that the movement of undocumented alien laborers across a national boundary into this country is within the constitutional power of Congress to regulate, and thus constitutes commerce within the reach of the Hobbs Act.

*Id.* at 1130-1131.

In *United States v. Ambrose*, 740 F.2d 505 (7th Cir.1984), *cert. denied*, 472 U.S. 1017 (1985), the Seventh Circuit, relying on *Hanigan*, ruled that policemen who extorted sums for protection of illegal narcotics activity were properly convicted under the Hobbs Act:

> ... The defendants argue that the interstate commerce affected must be legal. Some legal interstate commerce *was* affected by the defendants' extorting money from the drug dealers whom they protected - commerce in quinine and other substances that are mixed

5

with heroin and cocaine in preparing them for sale to the consumer. It is immaterial that the amount of commerce affected was small, either absolutely or relatively; $68 a month was held large enough in *United States v. Boulahanis*, 677 F.2d 586, 589-90 (7th Cir.1982), and the amount here was a lot more. The difference between this case and *Boulahanis*, however, is that here the lawful commerce was incidental to an unlawful activity, the sale of illegal narcotics; and it can be argued that anything that obstructs that commerce discourages the unlawful activity and is therefore a good thing. Moreover, most of the commerce affected by the defendants' extortionate activity was itself illegal commerce, in narcotics; and again it can be argued that to burden an illegal interstate business is to promote the ultimate objectives of the Hobbs Act. Yet *United States v. Hanigan* ... held that the Hobbs Act does not require that the interstate commerce affected by a defendant's extortionate activity be legal.

We think this holding is correct, at least in a case such as the present where the sums extorted are for protecting an illegal activity. Although the drug dealers paid the defendants substantial sums that, considered in isolation, increased the dealers' costs of doing business, the dealers got in return something invaluable to them - police protection that enabled them to conduct their businesses on a far larger and presumably more profitable scale than would have been possible if they had lacked such assistance. The benefits to the illegal activity exceeded the costs, so that on balance the activity was promoted rather than retarded. The issue is therefore whether the Hobbs Act can reasonably be read to punish extortion that promotes illegal commerce as well as extortion that retards legal commerce. Although discouraging the latter type of extortion has been said to be the dominant purpose of the Act, see, e.g., *Stirone v. United States*, 361 U.S. 212, 215 ... (1960); *United States v. Mattson*, 671 F.2d 1020, 1023 (7th Cir.1982), discouraging the former is a complementary objective and one well within

>            the Act's language.  Moreover, it would be
>            unrealistic to suppose that all Congress
>            cared about in passing the Hobbs Act was
>            promoting trade among the states; common
>            sense, with a little support in legislative
>            history, suggests that interstate commerce
>            was not merely the object of Congress's
>            solicitude but also a handle for enabling
>            federal power to be brought to bear on
>            criminal activities that, because of their
>            multistate incidence, the states had
>            difficulty controlling ... The extortion in
>            this case is within the scope of intended
>            prohibition.

*Id.* at 511-512.  *Accord United States v. Jones*, 30 F.3d 276, 285-286 (2nd Cir.), *cert. denied*, 513 U.S. 1028 (1994).

These cases establish that the legality or illegality of the business is not relevant or material for purposes of the interstate commerce element of the Hobbs Act.  Consequently, the absence of a valid City of Fresno business license for Videotronics at the time of the robbery does not negate this Court's jurisdiction.  The alleged failure of the prosecutor to present evidence to the Grand Jury or at trial that Videotronics' business license had expired is not prosecutorial misconduct.  The failure of defense counsel to file pre-trial motions or argue at trial or on appeal that the absence of the City of Fresno business license negated the interstate commerce element of the Hobbs Act cannot be ineffective assistance of counsel.  Such motions clearly would have been without legal merit.  Failure to make a meritless argument does not constitute ineffective assistance of counsel.  *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir.1985), *cert. denied*, 474 U.S. 1085 (1986).

Petitioner's claim that Videotronics sold no merchandise after March 12, 1996 is unsupported by evidence.  The statement in Exhibit A that "City Hall closed Videotronics on March 31, 1996, because Mr. Rosemond had not paid to keep his business license" is inadmissible hearsay.  Further, this statement is contradicted by the evidence related to the Grand Jury by FBI Agent Kominek that he interviewed Robert Peel, an employee of Videotronics on May 1, 1996 and that Mr. Peele stated that Videotronics bought parts to repair televisions from a wholesaler on the East Coast and sold televisions manufactured in Japan. Detective Stokes testified to the grand jury that he observed a big screen television manufactured by Hitachi for sale at Videotronics.  At trial, Robert Peel testified that he was employed as a technician at Videotronics, that Videotronics sold TV's and VCR's made outside of California, and that Videotronics folded after Malcolm Rosemond was murdered.  Malcolm Rosemond's brother, Keith Butler, testified at trial that he assembled the business records of Videotronics and closed the business after Rosemond's murder.  Mr. Butler identified a collection of orders, invoices and business records from Videotronics that showed the type of interstate commerce Videotronics was engaged in until its closure in May, 1996.

Subsequent to the filing of the Section 2255 motion, Petitioner filed a motion for post-conviction discovery pursuant to Rule 6, Rules Governing Section 2255 Proceedings for the United States District Courts.  Rule 6(a) provides in pertinent

part:

> A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law.

"To show 'good cause,' a movant must present specific allegations which give reason to believe that the movant may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *United States v. Atkin,* 80 F.Supp.2d 779, 787 (N.D.Ohio 2000); *see also United States v. Bontkowski*, 262 F.Supp.2d 915, 920 (N.D.Ill.2003).

Attached to Petitioner's motion is a copy of an Information filed in the Fresno County Superior Court against Malcolm Rosemond, charging him with selling and furnishing cocaine base on August 30, 1995 in violation of California Health and Safety Code § 11352. Also attached to Petitioner's motion is a copy of a state search warrant for Videotronics issued on August 25, 1995. The affidavit in support of the state search warrant avers that a confidential informant purchased $50.00 worth of rock cocaine from David Hill in a "tire shop warehouse" located in the same building as Videotronics, the office area of which appeared to the CI to be common to both the tire shop warehouse and Videotronics. The Affidavit to the state search warrant further avers in pertinent part:

> I am also aware that persons purchasing drugs may exchange resalable video and audio equipment for drugs. It has come to my attention that a second hand resale business permit has been issued by the City of Fresno

> for the business located at 930 Fresno St.
> [Videotronics]. This is functionally the
> same permit need to conduct a 'pawn broker'
> business from this location. Given the
> nature of the Videotronics business, the
> presence of electronic equipment in the
> garage area and the issuance of the resale
> license by the City of Fresno, I request that
> the search be included to encompass all
> video, audio and other electronic items
> located at the business to determine whether
> the items are stolen and/or in the rightful
> possession of the business, and to seize any
> of the above mentioned items that can
> reasonably be determined to be involved in
> illegal drug transactions or are not in
> compliance with the legal conditions or
> restriction concerning the resale license.

Petitioner contends that Videotronics "was basically a crack house and not a business, but a front." Petitioner requests that the Court grant post-conviction discovery "and compel the government to release all documents pertaining to the arrest of Malcolm Rosemond and execution of the Search Warrant at 930 Fresno St. (Videotronics)." Petitioner further requests:

> Upon obtainment of these documents, it is
> respectfully requested that the court grant
> leave to supplement the record in
> relationship to the issues presented, or any
> other matters that may be deemed relevant to
> these proceedings as a result or reviewing
> these documents. It is further requested
> that the court stay any further proceedings
> pending ruling on this post-conviction
> discovery motion and review of said
> documents.

In his re-newed motion for post-conviction discovery filed on October 12, 2007, Petitioner contends:

> [He] submits that he should be allowed Post-
> Conviction Discovery ... where it was his
> contention at trial [sic] and on habeas that
> the Videotronics store was not a place of

10

>business, but a crack house, that the items seized in the execution of the warrant would prove that Videotronics was not operating in interstate commerce.  The seized purchasing and ordering receipts will show that the closure of videotronics [sic] did not affect interstate commerce because the store did not actually sell or repair electronic equipment because the Videotronics was a crack house.  Moreover, the notes from the taped phone conversations between the officers and the alleged employees will show that all the calls were for crack, not television parts or repairs.  The taped conversations would also prove that the government's witnesses, Robert and Calvin Peele testified falsely that the [sic] were technicians who worked at the store selling electronic equipment or repairing TV's, because the tapes would show that the [sic] were crack dealers who perhaps had made sales of controlled sales of drugs to people at the 930 address.

Petitioner's motion for post-conviction discovery is DENIED.  For the reasons discussed above, that Videotronics may have been conducting an illegal business as well as a legal business does not negate the interstate commerce element of the Hobbs Act.  Furthermore, the state search warrant concerned an alleged narcotics transaction almost a year prior to the robbery and murder of which Petitioner stands convicted.

## CONCLUSION

For the reasons stated above:

1.  Petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is DENIED;

2.  Petitioner's motion and re-newed motion for post-conviction discovery is DENIED;

3.  The Clerk of the Court is directed to enter judgment for

11

1  **Respondent.**

2       IT IS SO ORDERED.

3  **Dated:   October 22, 2007**               /s/ Oliver W. Wanger
                                               UNITED STATES DISTRICT JUDGE